OPINION
Appellant, Deborah Baas, appeals a decision of the Clinton County Court of Common Pleas, Juvenile Division, granting permanent custody of her children to the Clinton County Children Services Board ("CCCSB").
On August 26, 1994, CCCSB filed a complaint in the Clinton County Court of Common Pleas, Juvenile Division, alleging that appellant's children, Steven, born on September 8, 1978, and Michele, born on March 19, 1984, were neglected and dependent. The complaint was based upon the allegations that appellant had left both children in the care of Mel and Janet Stein ("Steins") with a handwritten note purporting to grant "temporary guardianship" of the children to the Steins.[1] The complaint further stated that appellant made no other arrangements for the care and support of the children and that she departed for Florida without leaving an address or telephone number or later providing the Steins with that information.
On September 8, 1994, the trial court granted temporary custody of the children to CCCSB. On September 26, 1994, a case plan document was filed which required appellant and the children's father, Roy Andrews, to attend parenting classes and mental health counseling. The plan also required Andrews to obtain an alcohol and drug assessment. When the case plan was filed, appellant's whereabouts were unknown.
On October 21, 1994, the trial court adjudicated both children neglected and dismissed the dependency allegations. The trial court also extended temporary custody of the children to CCCSB. Throughout the proceedings, appellant and Andrews were granted visitation with the children, although the record indicates that neither parent visited the children consistently or regularly.
On March 28, 1996, CCCSB filed a motion to modify their temporary custody of the children to permanent custody. On July 3, 1996, following a hearing, the trial court granted the motion, awarded permanent custody of the children to CCCSB, and terminated the parental rights of both appellant and Andrews. It is from this judgment that appellant now appeals, setting forth the following assignment of error:
 THE DECISION OF THE TRIAL COURT TO GRANT PERMANENT CUSTODY OF STEPHEN [sic] AND MICHELLE [sic] ANDREWS TO CHILDREN'S SERVICES AND TERMINATE APPELLANT'S PARENTAL RIGHTS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.[2]
In her sole assignment of error, appellant contends that the trial court's decision granting permanent custody of her children to CCCSB and terminating her parental rights was against the manifest weight of the evidence. Appellant argues that CCCSB failed to prove that permanent custody is in the best interest of the children. Appellant also argues that the trial court erred in granting the motion for permanent custody because CCCSB failed to use diligent efforts to promote reunification.
When some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280. Within the context of an award of permanent custody of a minor child to a county children services board, the juvenile court's finding will not be disturbed on appeal as being against the manifest weight of the evidence when supported by credible evidence. In re Lay (1987), 43 Ohio App.3d 78,80; In re Hederson (1986), 30 Ohio App.3d 187, 190.
R.C. 2151.353(A)(4) provides that a juvenile court may grant permanent custody of a child to a county children services agency where the child has been adjudicated neglected. According to R.C.2151.414(B), permanent custody may be granted to a movant if the juvenile court determines by clear and convincing evidence that permanent custody is in the best interest of the child and any one of the factors listed in R.C. 2151.414(B)(1)-(3) apply. In the Matter of: Kayla Puckett (Aug. 15, 1994), Butler App. No. CA94-01-001, unreported; In re: Krista House (Feb. 24, 1992), Butler App. Nos. CA91-01-016, CA91-02-022, unreported. For purposes of this appeal, the relevant factor in R.C. 2151.414(B) is found in section (1), which provides that "[t]he child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents." "[B]oth the `best interest' determination and the `cannot be placed with either parent' determination focus on the child, not the parent." In the Matter of Brittany Beverly (Mar. 31, 1994), Ross App. No. 93 CA 1992, unreported, at 4.
When making the best interest determination, the trial court must consider all relevant factors, including the factors specifically identified in R.C. 2151.414(D)(1)-(5). R.C.2151.414(D) provides that relevant factors which should be considered include the child's probability of adoption and whether adoptive placement would benefit the child, the child's interaction with family members and others, the child's wishes, the child's custodial history, and the child's need for a legally secure placement. Although a parent may be able to demonstrate the ability to care for his or her child, such a demonstration does not necessarily mean that placement of the child with the parent is in the child's best interest. In re Patterson (1984),16 Ohio App.3d 214, 215.
In determining whether a child can be returned to a parent within a reasonable period of time, the court must consider all relevant factors including the factors specifically enumerated in R.C. 2151.414(E)(1)-(8). Two factors listed in R.C. 2151.414(E), and pertinent to this case which require the court to find that the child cannot be placed with his parents within a reasonable time include situations in which the parents have (1) failed "continuously and repeatedly" to substantially remedy the conditions which led to the temporary custody order, and (2) demonstrated a lack of commitment toward the child. R.C.2151.414(E)(1) and (4). A lack of commitment toward a child has been found where a parent's visits with the child are sporadic and irregular. In re McCrary (1991), 75 Ohio App.3d 601, 606.
"[P]ermanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist." In re William S. (1996), 75 Ohio St.3d 95, 101; In re Weaver (1992), 79 Ohio App.3d 59,64. Clear and convincing evidence is that degree of proof which will create in the mind of the trier of fact a firm belief as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368; Weaver,79 Ohio App.3d at 64.
Anna Watkins, the CCCSB ongoing caseworker for the children, testified that the goals of the case plan required both parents to obtain mental health counseling and attend parenting classes to educate themselves on parenting skills. Watkins stated that the case plan recommended that appellant attend parenting classes because she had a history of leaving the children for periods of time without notice of where she would be or how to contact her. Watkins testified that to her knowledge neither parent had attended parenting classes or received mental health counseling. Watkins also stated that appellant has never contacted her regarding the children.
According to Watkins, Andrews' visits with the children since August 1994 have been inconsistent, periodic and sporadic. Watkins also testified that since August 1994, appellant has visited the children approximately six times, with her last visit occurring on June 8, 1996. Watkins stated that she believes appellant has had some telephone contact with the children.
Christopher Lester, a CCCSB intake caseworker for the children, testified that he was involved in the development of the case plan. Lester testified that the plan required both parents to involve themselves in parenting classes because there had been previous problems with appellant leaving the children either unsupervised or with very little supervision for long periods of time. Lester stated that mental health counseling was part of the plan in order to help appellant resolve some issues that she had with her ex-husband, Andrews. Lester stated that he discussed the case plan and its requirements with appellant on several occasions. Lester testified that when discussing the case plan with appellant, he discussed both the need for completion of parenting classes and mental health counseling and the importance of having some type of income and a stable living environment. Lester stated that to his knowledge appellant has not been involved in mental health counseling or parenting classes.
Lester also testified that both parents' visitation with the children was limited and sporadic. Lester testified that appellant had very few visits with the children over the course of two years. Further, according to Lester, appellant had very limited contact with him after the initiation of the neglect complaints and has called him only periodically. Lester also stated that during a recent telephone conversation with appellant, she did not discuss her employment status or living arrangements.
Janet Stein, foster mother of the children since 1994, testified that in June 1994, Steven called her from Andrews' home and asked if he could come live at her home, and that she agreed to allow Steven to live with her family. Stein indicated that when Steven came to her home in June 1994, she knew appellant was living in Florida but she did not know appellant's address or telephone number. Stein testified that two months later, in August 1994, appellant called her and asked if Michele could live with her family and that she agreed to care for Michele as well.
Stein testified that Andrews has had several visits with the children but his visits are not consistent or routine. Stein testified that appellant visited the children approximately five times between August 1994 and January 1996. Stein stated that since January 1996, appellant has visited the children once, on June 8, 1996. Stein also stated that appellant occasionally calls the children on the telephone, approximately once every three months.
Roy Andrews, the father of both children, testified that he is not opposed to CCCSB obtaining permanent custody of the children because at this time he is unable to be a full-time parent to them. Andrews stated that he has not attended mental health counseling or parenting classes, and has not completed a drug and alcohol assessment, as required by the case plan. Andrews stated that his visits with the children have been inconsistent due to his employment as a truck driver.
Appellant testified that she currently resides in Sneads, Florida, where she has lived for the past six months. Appellant testified that she is employed full-time at the "Express Lane," which is a convenience store. Appellant stated that she has been employed at the Express Lane for approximately six weeks. Appellant stated that she currently resides in a "two to three bedroom" apartment with another person.
Appellant testified that in the summer of 1994, Steven went to Ohio to spend the summer with Andrews and that he "ended up" at the Stein home. Appellant stated that Steven called her and told her that he wanted to stay at the Stein home for the summer. In response, appellant stated that she did not tell Steven that he should come to her home in Florida. Appellant stated that the Steins had her telephone number and address in Florida at that time. Appellant testified that she asked the Steins if Michele could live with them because at that time she did not have anywhere to live.
Appellant stated that since August 1994, she has had discussions with CCCSB regarding the return of her children approximately two times. Appellant testified that she was never told about the case plan and that she did not know that she was supposed to attend parenting classes and mental health counseling.[3] Appellant stated that she was aware that she would have to obtain adequate housing and employment in order to have her children returned to her care. However, appellant stated that even though she knew she needed appropriate housing and employment, when she obtained such, she did not inform CCCSB or the Steins.
Appellant stated that from January 1996 to June 8, 1996, she did not visit the children because she had been living in Florida since August 1995. Thus, in the last six months, appellant stated that she visited the children one time, on June 8, 1996. From August 1994 through January 1996, appellant testified that she visited the children approximately four or five times. According to appellant, she was living in Florida in August 1994, but moved back to Ohio in October 1994, where she remained for approximately eight months.
Appellant testified that between October 1994 and August 1995, she lived on Pansy Road in Clarksville, Ohio. Appellant stated that her residence on Pansy Road was no more than seven miles from the Stein home. However, during that time, appellant visited the children only three or four times. Appellant stated that she could not see the children more often because she did not have transportation to the Stein home and did not seek assistance from either CCCSB or the Steins. Appellant also stated that when she lived in Florida, it was not within her economic means to travel back and forth to Ohio to see the children.
Appellant testified that she has not attended any parenting classes or mental health counseling as required by the case plan. Appellant stated that had she known about the requirement of parenting classes and mental health counseling she would have made an effort to attend and probably would have attended, however, she stated that she also probably would have had the same transportation difficulties that she did with the visitation. Appellant testified that she has called the children on the telephone but she does not know how often. Appellant stated that in the past six months she has not called very often because the Steins told her not to call because her calls upset Michele.
The trial court found clear and convincing evidence that appellant had not complied with the case plan and had failed continuously and repeatedly for a period of at least six months to substantially remedy the condition causing the children to be placed outside her home. The court also found clear and convincing evidence that appellant had demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with them when able to do so. Finally, the trial court found clear and convincing evidence that it is in the best interest of the children to be placed in the permanent custody of CCCSB, due to the custodial history of the children and their need for legally secure placement.
Based upon a thorough review of the record, we find no error in the trial court's decision granting permanent custody of the children to CCCSB and terminating appellant's parental rights. The record indicates that the trial court considered all relevant factors, including those listed in R.C. 2151.414(D)(1)-(5) before determining that a permanent custody award to CCCSB is in the best interest of the children. The record also indicates that the trial court considered all relevant factors, including those listed in R.C. 2151.414(E)(1)-(8), before determining that the children could not be placed with appellant within a reasonable time.
The record indicates that appellant has not complied with the case plan developed by CCCSB, has not attended parenting classes or mental health counseling, has visited the children only six times in the past two years, including the approximate eight month time period when she lived no more than seven miles from them, has not telephoned the children often, and has only contacted CCCSB regarding her children on two occasions.
Therefore, we find that the juvenile court's decision to grant permanent custody of the children to CCCSB was not against the manifest weight of the evidence. See Seasons Coal,10 Ohio St.3d at 80; Hederson, 30 Ohio App.3d at 190. Accordingly, appellant's sole assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] The record indicates that Steven began residing with the Steins in June 1994 and Michele began residing with the Steins in August 1994.
[2] The record indicates that the correct spelling of the children's names are "Steven" and "Michele."
[3] Appellant's testimony that she was not aware of the case plan requirements differs from the testimony of Lester, who testified that he discussed the case plan requirements with appellant. The trial court found that, based upon "the testimony and the Court's opportunity to observe the witnesses, I believe that at some point the case plan was discussed [with appellant]." An appellate court must not substitute its judgment for that of the trial court where there is competent, credible evidence to support the trial court's decision. Seasons Coal,10 Ohio St.3d at 80. Therefore, we will accept the trial court's finding that the case plan was discussed with appellant.