IN RE HEDERSON, ALLEGED DEPENDENT AND NEGLECTED CHILD.

---

188

(No. 12288—Decided March 5, 1986.)

*Lynn C. Slaby,* prosecuting attorney, for appellee.

*Walter R. Lawrence,* for appellant.

GEORGE, J. Permanent custody of Joy Ann Marie Hederson, born March 17, 1981, was granted to the Summit County Children's Services Board ("CSB") in July 1985. George Monroe Hederson, defendant-appellant and natural father of Joy, murdered Joy's mother, Sheryl, when Joy was two years old. Sheryl Hederson was Hederson's stepdaughter, whom he married after she became pregnant. Hederson is serving a life sentence for the aggravated murder of Sheryl and will not be eligible for a parole hearing until April 1999. Joy will then be eighteen years of age.

Assignments of Error

"I. The trial court erred in finding by clear and convincing evidence that the SCCSB either; [*sic*] made a good faith effort, or that such an attempt was unnecessary due to the fact that appellant was incarcerated.

"II. The trial court erred in finding by clear and convincing evidence that appellant has acted in such a way that Joy was a child without adequate parental care and that this was likely to continue in the near future.

"III. The trial court erred in granting permanent custody of Joy to SCCSB in that such decision was against the manifest weight of the evidence and based solely upon the fact that appellant was incarcerated."

These assignments of error will be discussed together, since the facts determinative of one will be determinative of the others.

CSB obtained temporary custody of Joy on April 1, 1983, along with Hederson's older children, each of whom was at least ten years older than Joy. They are George, Jr., Christopher, Patrick, Kathleen and Deborah. Joy was placed first in the physical custody of her eighteen-year-old half sister, Mary, along with the other children. Mary wanted to leave Ohio and Joy and the other children were next placed with a

friend of Hederson. After a short period of time, the friend declined to remain responsible for the children because of her own domestic problems. When the friend was relieved of the children's temporary custody, Joy was physically placed with her cousin in Massachusetts, Charles Young, and his wife, Andrea, where she remains.

Before a court may terminate parental rights and grant permanent custody to a board such as CSB, R.C. 2151.414 (A) requires the court to determine: (1) that the county has made a good faith effort to implement the initial and comprehensive plans for the child; (2) that the parents have acted so as to leave the child without adequate parental care and that they will continue to so act within the near future; and (3) that it is in the best interests of the child to permanently terminate parental rights. Permanent custody may be granted to CSB only if the trial court determines upon clear and convincing evidence that the parents have acted in such a manner that the child is without adequate parental care and will continue to act in the near future in such a manner that the child will continue to be without adequate parental care. R.C. 2151.414(B).

Here, initial and comprehensive reunification plans were filed with the trial court and approved on June 6, 1983. Hederson claims that these were "perfunctory at best." However, the plans provided that Mary, Joy's half sister, was to be guardian and that upon Hederson's release from prison, visitation would be discussed.

Hederson's main objection to the plans is the lack of any provision for contact with Joy either by phone, letters, cards, visitation, or any other means. R.C. 2151.412 mandates the preparation of these plans and R.C. 2151.414 requires the court to determine that a good faith effort has been made to implement them. But as the trial court noted, the legislature failed to address the unavailability of the parent(s) by reason of incarceration.

The statute places a duty upon CSB to make a good faith effort to reunify the family, but how much can be expected of CSB when the only remaining parent is in jail and in all likelihood will remain there until the child reaches the age of majority? A life sentence is quite different from a sixty- or ninety-day sentence.

The evidence shows CSB did what it could here. The plans called for Joy's half sister, Mary, to take care of her and for counseling for Mary so as to assist her in that task. (Mary also had responsibility originally for the other Hederson children.) The plan indicated visitation would be discussed when Hederson was released from prison. This court finds that CSB made a good faith effort to implement the reunification plans.

Hederson asserts that the trial court should have taken into consideration that he still has appeals pending and that he may be released from prison before 1999. However, the purpose of R.C. Chapter 2151, as expressed in R.C. 2151.01(A), is "[t]o provide for the care, protection, and mental and physical development of children * * *." A child has needs that cannot wait. Joy is entitled to the nurture, love and moral guidance of a family unit. There was evidence before the trial court that Hederson would be incarcerated at least until 1999. The trial court cannot be faulted for rejecting speculative projections concerning the length of his incarceration and acting upon the fact that the earliest possible opportunity for parole is 1999.

Where the sole parent's term of imprisonment is a lengthy one, such imprisonment may be a significant factor in determining whether the parent has acted so as to leave the child without adequate parental care. Should such imprisonment satisfy the standard of clear and convincing evidence that the child is

without adequate parental care, the continuing imprisonment of the parent may likewise be considered in determining whether such deprivation will continue. Under such circumstances, the imprisoned parent's rights may be properly terminated.

The trial court found that Hederson's acts deprived Joy of adequate parental care and that the circumstances were such that she will continue to be deprived in the future. Joy was deprived of her mother's parenting by Hederson's criminal conduct. That same conduct caused him to be unable to care for her during her entire minority. Clearly, Hederson was directly responsible for depriving Joy of all parental supervision and care, thus rendering her a dependent child without adequate physical, emotional and financial support. His expressions of concern are no substitute for the guidance and support of a present parent.

Finally, the court determined that it was in Joy's best interests for permanent custody to be granted to CSB and eventually to the Youngs. Even Hederson realized that Joy's best interests were served by her placement with someone other than himself and that the Youngs are suitable parents. He testified:

"I oppose the adoption of Joy. I would like Joy to remain with the Youngs. I believe the Youngs are doing a fine job with raising Joy.

"My only objection is they have stopped the children — the other children from visiting with Joy and talking with Joy over the telephone. Let the court realize that I am not opposed to Joy staying with the Youngs.

"The Youngs do a very fine job. I wish they would correspond with me as the rest of the family. It is not my intention, if I was released today, to take Joy away from the Youngs. I don't feel this (taking Joy back) is in the best interests of the child. I wouldn't do this."

There being credible evidence to uphold the trial court's finding, this court will not disturb such finding as against the weight of the evidence. *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578.

In view of the above, the trial court's judgment granting permanent custody of Joy to CSB is affirmed and each error assigned is overruled.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.