Tyrone Arnold timely appeals the decision of the Juvenile Division of the Lorain County Court of Common Pleas not to grant a continuance in the permanent custody hearing for his daughter Talina Seymore. This Court affirms.
Talina Seymore was born on June 20, 1990, to Chalanda Seymore and has been subject to involvement by the Lorain County Children Services (LCSS) since February 1994, when her half-sister was born addicted to cocaine. On January 25, 1996, the Lorain County Court of Common Pleas, Juvenile Division gave emergency temporary custody to LCCS, due to the absence of Chalanda Seymore and the chronic homelessness of and drug abuse by Talina's caregiver, her maternal great-grandmother, Barbara Hinton. Temporary custody was granted to LCCS on April 8, 1996. After three semi-annual reviews, when it was clear that Ms. Hinton would not be able to properly care for Talina, LCCS filed a Motion for Permanent Custody on June 20, 1997. At that time, it was not certain to LCCS that Appellant was the actual father of Talina and, as his whereabouts were unknown, he was served by publication.
By August 1997, Appellant had been clearly identified as the actual father and he was located at Marion Correctional Institute where he was serving a sentence of three to fifteen years for aggravated drug trafficking. On August 29, 1997, Appellant was served in person with the summons, a copy of the complaint and the motion for permanent custody. At that time, Appellant advised LCCS that he did not want the agency to have permanent custody of Talina, and that he wanted to have a court-appointed attorney represent him. On September 29, 1997, attorney Amy Wirtz was appointed counsel for Appellant. Appellant also made known to LCCS that both his mother and his sister were willing to assume custody of Talina and either would be an appropriate caregiver. An investigation by LCCS, however, revealed that neither woman was willing or capable of assuming such a role.
On January 27, 1998, the Lorain County Sheriff was ordered to transport Appellant from Marion Correctional Institution to the Lorain County Court of Common Pleas on February 3, 1998, to allow him to attend the hearing on the Motion for Permanent Custody. The Lorain County Sheriff declined to transport the Appellant due to insufficient notice. At the hearing, Ms. Wirtz requested the court below to grant a continuance to allow for Appellant's presence at the hearing. The attorney for LCCS argued for denial of the request, based on this Court's decision to uphold a similar denial of an incarcerated parent's request to be at a hearing for permanent custody. See In re Andrew Smith (March 1, 1995), Summit App. No. 16778, unreported. The court below then denied Appellant's request for a continuance. The hearing proceeded and permanent custody of Talina was removed from both parents and granted to LCCS. Talina's father, Tyrone Arnold is the sole Appellant before this Court and he presents one assignment of error.
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN IT FAILED TO RETURN THE NATURAL FATHER, APPELLANT, TO LORAIN COUNTY FROM THE MARION CORRECTIONAL INSTITUTION FOR THE PURPOSE OF THE HEARING ON THE MOTION FOR PERMANENT CUSTODY.
The United States Supreme Court has determined that parents have a fundamental liberty interest in the care, custody and management of their children. Santosky v. Kramer (1982),455 U.S. 745,753, 71 L.Ed.2d 599, 606. As such, when the state seeks to terminate their custody, parents are entitled to due process guaranteed by the Fourteenth Amendment to the United States Constitution. In re Matthew Harding (January 25, 1995), Summit App. No. 16552, unreported, at 5. Included in such due process rights granted to Appellant are notice of the hearing, assistance of counsel, and presence at the hearing itself. However, Ohio courts have determined that the right of access to the court is not absolute. In re Vandale (June 29, 1993), Washington App. No. 92CA31, 1993 Ohio App., Lexis 3465, unreported. The Vandale court determined that other procedural protections, such as representation by counsel and the ability to submit evidence by deposition, may be sufficient to ensure that Appellant's due process rights are preserved.
The Vandale court relied on the three-pronged balancing test outlined by the United States Supreme Court to determine Appellant's due process rights. Id., citing Mathews v. Eldridge
(1976), 424 U.S. 319, 335, 47 L.Ed.2d 18, 33. The importance of Appellant's right to be present at the custody hearing is determined by weighing three factors: (1) the private interest affected by the court's action; (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value of substitute procedural safeguards; and (3) the government's interests, including here, its parens patriae
interest in ensuring Talina's best interests and its administrative and safety burden in transporting the Appellant from prison to the hearing. See id.
The private interests affected by the court's decision, Appellant's parental rights to the care and custody of Talina, are "essential" and "basic" rights. Vandale, supra, at 4, citing Inre Murray (1990), 52 Ohio St.3d 155, 157 and Stanley v. Illinois
(1972), 405 U.S. 645, 651, 31 L.Ed.2d 551, 558. Notwithstanding the fact that Appellant apparently discovered his paternity of Talina only some six months prior to the permanent custody hearing, he was entitled to attempt to prevent the termination of his parental rights.
The second prong of the Mathews test undercuts Appellant's position, however. The risk of erroneous deprivation of Appellant's interest through the procedures used (notice, presence of counsel) is minimal. At the time of the hearing, Appellant was serving a three to fifteen year sentence for aggravated drug trafficking. Appellant would not have been able to exercise his parental rights of care and custody of Talina for at least two more years. This time factor also implicates part of the third prong of this test, namely the government's parens patriae
interest in pursuing Talina's best interests for care and custody. Further delay in arriving at a determination of permanent custody would not be in the best interests of this child who had been in the temporary custody of LCCS for nearly two years. The LCCS caseworker testified that Talina had met with a potential adoptive family and had bonded well with that family. Finally, the government had an interest in reducing the cost, administrative and safety burdens involved in transporting the Appellant from Marion Correctional Institution to the hearing and back again.
The heart of the issue here is the second prong of the test, the risk of erroneous deprivation of Appellant's rights given the procedures used and the probable value of substitute procedural safeguards. An assessment of such risk requires a determination as to what, in practical terms, Appellant's rights to the care and custody of Talina would be. These rights of parental care and custody are limited by the parens patriae role of the state which allows the state to reassign permanent custody of minor children away from the natural parents. This role is outlined in R.C 2151.41.4(B-E). When, as here, a child is not abandoned or orphaned, the statute requires the juvenile court to find by clear and convincing evidence both that: (1) the granting of permanent custody to the petitioning agency is in the best interests of the child, and (2) the child cannot or should not be placed with either parent within a reasonable time. To determine that the child cannot or should not be placed with a parent, the court need only find, by clear and convincing evidence, that one of eight factors listed in R.C. 2151.41.4(E) is present. Appellant's case implicates at least one such factor:
 (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
R.C. 2151.41.4(E)(12).
In cases factually similar to the instant case, this Court has found that parental rights have been validly terminated. An appellate court will not reverse the lower court's decision if it is supported by sufficient credible evidence. In re Jones (Nov. 27, 1991), Summit App. No. 15116, unreported, at p. 4, citing Inre Hederson (1986), 30 Ohio App.3d 187, 190. Appellant does not contest the evidence submitted by LCCS that at the time of the hearing he was serving a prison term that had no less than two years remaining. Were the lower court's decision to be reversed, with Appellant to assume his parental custody at the end of his sentence, Talina would have to remain in foster care until she was at least 10 years old.
Appellant requests this Court to reverse the lower court's decision and remand for further consideration based on that court's failure to grant Appellant a continuance to permit his presence at the lower court's hearing. Under Ohio law, the denial of a continuance by a lower court will be reversed only if it is found that the lower court abused its discretion in issuing the denial. State v. Unger (1981), 67 Ohio St.2d 65, 67. The continuance in question here is at issue only because the Appellant sought to be present at the hearing. This Court affirms the proposition that "[T]he appellant has a constitutionally protected right to be present [at the hearing] but * * * such a right is not absolute." Vandale, supra.
The fact that Appellant had counsel present, and could have presented evidence via a deposition mitigates against the importance of Appellant's actual presence at the hearing. Appellant, through his counsel, did not seek to present testimony to the court below by means of a deposition. Thus, Appellant's argument that the trial court abused its discretion by not considering additional or substitute procedural safeguards is inapposite.
This Court has maintained that "[a] continuance because of a party's absence is only a matter of right when it is likely that the party will be prejudiced due to his failure to present testimony[.]" In re Jones (Aug. 14, 1991), Summit App. No. 14964, unreported at 3-4, citing Guccione v. Hustler Magazine (1979),64 Ohio Misc. 36, 38. Appellant argues that the presence of his counsel was insufficient to ensure his right to present testimony, since the "chief witness was Appellant." However, Appellant's presentation of testimony via deposition, along with the presence of counsel, is sufficient to ensure his right to present testimony. Vandale, supra. Furthermore, it is unlikely that anything Appellant may have presented by way of testimony regarding the disposition of the case before the juvenile court would have mitigated against giving LCCS permanent custody of Talina. Talina had been in foster care for nearly two years at the time of the permanent custody hearing. Given the Appellant's long sentence yet to be served, the court was fully justified in finding by clear and convincing evidence that it was in Talina's best interest to grant permanent custody to LCCS and that Talina could not or should not be placed with either parent within a reasonable time.
The assignment of error is therefore overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
CARR, J. and MAHONEY, J. CONCUR.
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)