OPINION
Appellant Melissa Wark appeals a judgment of the Stark County Common Pleas Court terminating her parental rights, and awarding appellee Stark County Department of Human Services (DHS) permanent custody of her twin sons, Jeremiah and Michael:
 ASSIGNMENTS OF ERROR:
I. THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED STARK COUNTY DEPARTMENT OF HUMAN SERVICES' MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED STARK COUNTY DEPARTMENT OF HUMAN SERVICES' (DHS) MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF APPELLANT BECAUSE THE DHS DID NOT MAKE REASONABLE EFFORTS TO REUNIFY THE CHILDREN WITH APPELLANT.
Jeremiah and Michael Wark were born on January 2, 1995. At the time, appellant and Theodore Wark, the father of the boys, were residing together. DHS began working with the family voluntarily in November of 1995. DHS was concerned with cleanliness in the home, poor hygiene, medical care of the children, and poor parenting skills. In May of 1996, DHS filed an affidavit alleging that Jeremiah and Michael were dependent children. DHS sought protective supervision over the children while they remained in their parent's home. On May 15, 1996, the court ordered protective supervision. DHS provided a home aide to assist appellant in cleaning the home and caring for the children. During the time the aide visited the home, the conditions in the home improved; however, when the aide stopped going to the home, the conditions deteriorated. During this time, the children were in protective day care. The children were ill frequently. Both boys had continuous breathing problems, and a bowel problem which continued longer than normal. The children's appearance at day care was frequently unkempt and dirty. The children appeared with insect bites covering their bodies. Although the care of the children improved during the time the home aide was working with the family, problems with the children's appearance and health care persisted. In August of 1996, a worker at the protective day care discovered a roach in the diaper of one of the boys. Upon further investigation, DHS discovered a roach nest in the children's play pen, and another in the kitchen. Further, despite eligibility for utility payments through the FACES program, appellant and her husband had failed to fill out the proper forms, and the gas and electricity in the home had been turned off. Accordingly, the children were removed from the home, and a shelter care hearing ensued. After spending several weeks in the temporary custody of DHS, the children were once again returned home, with protective supervision. At that time, Theodore Wark was in the Stark County Jail, due to allegations of domestic violence. DHS provided assistance to appellant during this time through the First Unit intensive home program. Again, the condition of the home improved somewhat while the First Unit was involved, but when the services were stopped, the hygiene and cleanliness problems returned. In June of 1997, appellant left the home with the boys. She soon determined that the boys would be better off living with their father, and returned them to Theodore Wark at 1:30 A.M. The boys continued to reside with their father until September of 1997. Appellant initially lived with some friends. Her case worker at DHS informed her that the home in which she was living was inappropriate for the children, based on past involvement by DHS with the family. Over the next several months, appellant failed to obtain independent, stable housing. DHS frequently had difficulty locating appellant. In September of 1997, DHS removed the children from their father's home. The concerns were once again, cleanliness, hygiene, and inappropriate care of the children. Temporary custody of the children was awarded to DHS. During the next several months, DHS once again had difficulty locating appellant. She had three scheduled supervised visits with the children. The first she canceled, as she needed to attend a court hearing for Theodore, on a charge of Domestic Violence. The second visit was scheduled to occur at the protective day care site; however, the boys were sent home with lice on that day. The third visit appellant cut short because she thought the boys were hungry and tired, and wanted to go home. In late November or early December of 1997, appellant moved into an apartment in Alliance with her new boyfriend. DHS became concerned about the boyfriend, as they were aware of a warrant for his arrest pending in West Virginia. When DHS attempted to meet with him, he refused to cooperate with DHS in any manner. After living in Alliance for several months, appellant and her boyfriend moved to West Virginia to live with his parents. At the time of the permanent custody hearing in the instant case, appellant's boyfriend was free on bond on three pending charges, and unable to leave the State of West Virginia. On January 2, 1998, DHS filed a motion for permanent custody. The case proceeded to trial in the Stark County Common Pleas Court, Family Court Division. Following the adjudication and disposition hearings, the court terminated appellant's parental rights, and awarded permanent custody of the boys to DHS.
 I.
Appellant argues that the judgment is against the manifest weight of the evidence. She argues that the court erred in finding that the boys could not be placed in her home within a reasonable time, that she had demonstrated a lack of commitment to the boys, and that she was unwilling to provide basic necessities for the boys. She argues that with the exception of obtaining stable housing, she completed her case plan, including Goodwill parenting classes. She also argues that DHS failed to investigate her housing in West Virginia. Where there is credible evidence to support the trial court's finding, this court will not disturb the findings as against the manifest weight of the evidence. In Re: Hederson (1986),30 Ohio App.3d 187, 190. Although appellant did complete Goodwill Parenting, and the conditions in her home improved during the time services were consistently provided to her in the home, the evidence demonstrates that appellant was unable to independently care for the children in an appropriate manner. When home services were terminated, the home immediately deteriorated into a filthy condition. In addition, the children were frequently ill, and appellant did not appropriately care for their medical problems. The evidence presented through her own testimony demonstrates her inability to establish stable housing. After leaving the boys' father in the summer of 1997, appellant testified that she lived for one and one-half months with friends, for another one and one-half months with a different friend, then for two months with her new boyfriend in an apartment in Alliance. After this time, she and her boyfriend moved to West Virginia to live with his parents. While appellant argues that the home in which she is now living is a three-bedroom home, which DHS failed to inspect, the record reflects that DHS was unaware of her whereabouts in the period of time leading up to the motion for permanent custody. In fact, the judgment from the September 19, 1997, shelter care hearing reflects that appellant had provided no valid address, and failed to appear for the hearing. The evidence supports the court's finding that the children could not be placed with appellant within a reasonable time. Further, the evidence demonstrated that appellant lacked the commitment necessary to consistently remedy the conditions which lead to the removal of the boys from the home. Further, there was abundant evidence that appellant failed to provide basic necessities for the boys, such as medicine for illnesses and basic care. The first Assignment of Error is overruled.
 II.
Appellant argues that the court's judgment that the agency made reasonable efforts to reunite the family is against the weight of the evidence. Specifically, she argues that after the children were removed from their father's home in September of 1997, DHS made no further attempts to reunify the family. She argues that she was not notified of the September change of custody hearing, that DHS failed to inspect her home in West Virginia as ordered by the court in October, and that DHS failed to set up a consistent visitation schedule while the children were in their father's custody. The record reflects that at the time of the hearing in September of 1997, appellant had not provided a valid address to DHS or the court, and they were unable to locate her for a period of time. The record reflects that certified mail sent to appellant on September 18, 1997, concerning the change of custody proceedings, was returned unexecuted on October 10, 1997. The record further reflects that she was served by publication. In addition, while the court's judgment of October 9, 1997, provided that DHS shall make random home visits and keep notes regarding the home conditions of each parent, the court did not specifically order DHS to inspect the home in West Virginia. In fact, based on appellant's own testimony at trial, it appears that she was not residing in West Virginia at that time. The record demonstrates that by the time her whereabouts in West Virginia were discovered by DHS, the case was ready to go forward as a permanent custody trial in the Stark County Juvenile Court. In addition, the record reflects that appellant's housing situation was not independent, as she was residing with her boyfriend's parents. The record demonstrates that she and her new boyfriend had broken up at one point in time, and that he was uncooperative with DHS in the past. As to appellant's claim that DHS did not set up a consistent visitation schedule while the children were living with their father, the case worker testified that from June of 1997 through September of 1997, she was unable to locate appellant, despite attempts to find her through her mother. In spite of appellant's transiency during this time period, three visits were scheduled. As noted earlier, the only visit which actually occurred, appellant cut short. The record reflects that from the time of their involvement in November of 1995, DHS made reasonable efforts to keep the children in the home. Appellant was provided with services through home parent aides, First Unit intensive home assistance, Goodwill Parenting, the FACES program, and protective day care. Despite these services, appellant was unable to remedy the conditions in the home. By the Fall of 1997, when the care of the children necessitated their removal from the home, appellant's case worker was unable to locate her most of the time. The second Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court, Family Court Division, is affirmed.
By: Reader, V.J. Gwin, P. J. and Farmer, J. concur.