OPINION
This appeal arises from a decision of the Belmont County Court of Common Pleas, Juvenile Division, determining permanent custody of the four children involved in this appeal. The trial court granted a motion filed by the Department of Human Services Children Services' Division seeking a modification of temporary commitment to permanent commitment. For the reasons stated below, this Court affirms the decision of the trial court judge.
Alex Armijo, Appellant, is the natural father of Sarah, Alexander, Sonny and Julie Armijo. Although the record is not entirely clear as to the circumstances, it is clear that at all relevant times to this case Appellant was incarcerated at a correctional institution located in Soledad, California. (Report of guardian ad litem). On December 7, 1995, the natural mother of the children died of cancer. As a result, the Belmont County Children Services Board, now known as the Belmont County Department of Human Services-Children Services Division (hereinafter "CSD") filed a complaint in the Belmont County Juvenile Court alleging that the children were dependent. (Motion to Dismiss of Appellee, CSD)
On March 14, 1996, a hearing was held regarding the temporary custody of the children. Appellant was served with prior notice of this hearing at the correctional institution in California. Following the hearing, the court determined that the children were dependent and granted temporary custody to CSD. (Motion to Dismiss of Appellee, CSD). Two of the children were placed with their maternal aunt and uncle while the other two children were placed in a foster home. (Report of guardian ad litem). There was evidence tending to implicate Appellant in various forms of serious physical abuse of the children. (Transcript pp. 12, 22-23). As a result of the hearing, a guardian ad litem was appointed for the children and a case plan f or Appellant was filed. (Report of guardian ad litem). Although the actual plan has not been made a part of the record on appeal, there is an indication that the case plan consisted of parenting classes, mental health counselling, a mental assessment and drug and alcohol abuse counselling. (Transcript p. 3).
The record indicates that the guardian ad litem's efforts to ascertain Appellant's progress with his case plan were unsuccessful and that the caseworker assigned to this file never received any certificates of completion with reference to any of the classes Appellant was required to complete. (Transcript p. 5; Report of guardian ad litem). The record reflects that the caseworker never contacted Appellant directly and never spoke with anyone at Appellant's facility who was familiar with Appellant or his program. As a result of Appellant's apparent failure to make the necessary strides required in order to seek custody of his own children, CSD filed a motion seeking modification of the temporary commitment to permanent commitment. (Motion Requesting Modification of Temporary Commitment to Permanent Commitment; hereinafter "Motion"). In support of this motion, CSD provided the court with the recommendation of the guardian ad litem and concluded that the children were excellent candidates for adoption. Appellant was served with notice of the motion and of the scheduled hearing date. (Notice of Hearing).
On December 13, 1996, the juvenile court held a hearing on CSD's motion. (Journal Entry, Dec. 13, 1996). Appellant had made several telephone calls to the court to check on the status of the hearing and register with the court the fact that he did not want to relinquish permanent custody to CSD. Thus, although personally unable to attend the hearing as a result of his incarceration, Appellant was represented by counsel who did attend. (Journal Entry, Dec. 13, 1996). The hearing was continued until January 7, 1997, to allow Appellant's counsel time to secure the presence of a witness. (Transcript p. 27) On January 21, 1997, the juvenile court ruled on the motion and granted CSD permanent custody. (Journal Entry, January 21, 1997)
Appellant filed a timely notice of appeal on February 4, 1997, coupled with a motion to appoint appellate counsel. As a result of Appellant's failure to timely file a brief asserting assignment(s) of error, CSD moved this Court to dismiss Appellant's appeal. By journal entry dated November 12, 1997, this Court overruled the motion to dismiss and appointed counsel to pursue Appellant's appeal. On June 9, 1998, the Belmont County Public Defender filed a brief on behalf of Appellant which asserted a non-assignment of error and a motion to withdraw as counsel. In response to Appellant's no-merit brief, CSD filed a bare-bones motion which merely requested this Court to again dismiss Appellant's appeal. CSD did not, at any time, file a brief in this matter.
It is well established that parents have a fundamental liberty interest in the care, custody and management of their children.In re Shaeffer Children (1993), 85 Ohio App.3d 683, 689, citing,Santosky v. Kramer (1982), 455 U.S. 745. As this case pertains to the termination of such a fundamental right, this Court declines to dismiss the appeal and accordingly will undertake our own review of the propriety of the juvenile court proceedings. Full review of the matter is necessary, as terminating a parent-child relationship is an alternative of last resort employed only when required to preserve the welfare of the child. In re Cunningham
(1979), 59 Ohio St.2d 100, 105.
A juvenile court holding a hearing on a motion for permanent custody of a child who has been previously determined to be neglected, dependent, or abused must follow the statutory guidelines set forth in R.C. § 2151.414. One of those guidelines pertains to the notice requirement. R.C. §2151.414 (A) (1) requires that all parties to the action be given notice of the hearing. In addition, the notice must explain the consequences should the court grant permanent custody to an agency and must explain the parents' right to counsel.
Pursuant to R.C. § 2151.353 (A) (4), the court may grant the motion after it makes two separate determinations. First, the court must conclude, by clear and convincing evidence, that it is in the best interest of the child to sever the parent-child relationship and grant permanent custody to the moving party. Second, the court must find that one of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
 "(2) The child is abandoned and the parents cannot be located;
 "(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody".
R.C. § 2151.414 (B) (1) through (3).
When making the determination regarding what is in the best interest of the child, R.C. § 2151.414 (D) instructs the court to consider all relevant factors, including, but not limited to:
 "(1) The reasonable probability of the child being adopted, whether adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 "(2) The interaction and interrelation of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due respect for the maturity of the child;
"(4) The custodial history of the child;
 "(5) The child's need for a legally secure permanent placement and whether this type of placement can be achieved without a grant of permanent custody to the agency.
R.C. § 2151.414 (D) (1) through (5)
Additionally, if the court determines that pursuant to R.C. § 2151.414 (B) (1), the child should not be placed with the parents, the court must consider all relevant evidence and find clearly and convincingly that at least one of eight enumerated conditions exist that would prohibit placement with one of the parents. One of the enumerated conditions provides as follows:
 "(1) Following placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent[s] to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside the child's home . . ."
R.C. § 2151.414 (E) (1). Emphasis added.
As noted, the juvenile court must employ the "clear and convincing" evidentiary standard when applying the facts of the case to the statutory guidelines in determining a permanent custody request by CSD. The clear and convincing standard requires the party seeking a determination that the child should be permanently committed to the state to, "prove each of its allegations, clearly and convincingly, producing in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In the Matter of Mesko (April 24, 1997), Belmont App. No. 95 BA 32, unreported, citing, In re Brown
(1994), 98 Ohio App.3d 337, 343.
The role of this Court, in reviewing the juvenile court's decision, is to determine from the record whether the trial court, as the trier of fact, had sufficient evidence to satisfy the "clear and convincing" standard. In re Wise (1994), 96 Ohio App.3d 619,626, citing, In re Jones (Nov. 27, 1991), Summit App. No. 15116, unreported. The judgment of the juvenile court will not be reversed on appeal if it is supported by sufficient credible evidence. In re Wise, supra. See also,In re Brown (1994), 98 Ohio App.3d 337, 342.
As a preliminary matter, this Court notes that the notice requirement mandated by R.C. § 2151.414 (A) (1) was satisfied. The record reflects that Appellant received, via certified mail, notice of the hearing mailed to the California correctional institution and that Appellant's interests were represented by counsel at the hearing. This notice contained all of the statutorily mandated information required by R.C. §2151.414 (A) (1).
In making its "best interest of the child" determination as required by R.C. § 2151.414 (D), the court found that there was a very high probability that the children would be adopted. Sonny and Alex Armijo have been residing with their maternal aunt and uncle, the Avelas, for most of their lives and the Avelas have expressed a desire to adopt them. (Transcript P. 19). Sarah and Julie Armijo have been residing with a foster family. CSD has determined that these two children are "highly adoptable" and that if CSD were to be granted permanent custody, they in fact "would be adopted. (Motion)
Furthermore, the trial court heard testimony from the children's guardian ad litem. The guardian indicated that Appellant had thrown Sonny Armijo against the wall while he was an infant causing a skull fracture which resulted in brain damage and subsequent developmental delays. (Transcript p. 12). The children's counselor also testified at the hearing. During her testimony she revealed that the children were scared of Appellant, did not want to live with him and related past experiences of sexual and physical abuse of the children by Appellant. (Transcript pp. 21-23). There is evidence that one of the children witnessed Appellant beat the youngest child over the head and back with a belt. (Journal Entry, January 21, 1997).
After making a preliminary determination pursuant to R.C. sec;2151.414 (B) (1) that the children should not be placed with Appellant, the juvenile court, as required by R.C. § 2151.414
(E) (1), next examined Appellant's failure, "for a period of six months or more to substantially remedy the conditions which caused the children to initially be placed outside the home." Id.
Although this Court is mindful that Appellant was incarcerated during this six month period, we have previously held that the time a parent is in prison does not toll the six month period set forth in R.C. § 2151.414 (E) (1). In the Matter of Nolan
(Aug. 24, 1993), Mahoning App. No. 92 CA 109, unreported. See also, In re Henderson (1986), 30 Ohio App.3d 187 (holding that the continuing imprisonment of a parent may be considered in determining whether parental rights should be terminated). Appellant was afforded the opportunity to demonstrate progress towards the goals established in his case plan which was put in place when CSD was granted temporary custody. In this case, there was evidence that Appellant could have taken advantage of classes offered at the California prison that would have counted towards the requirements of his case plan, but failed to do so. (Report of guardian ad litem; Transcript pp. 3-5).
Our review of the record indicates that the juvenile court had sufficient evidence to satisfy the clear and convincing evidentiary standard. As the juvenile court's determination is supported by sufficient credible evidence, this Court will not disturb that determination. The court complied with all of the procedural and substantive requirements set forth by statute and its judgment is accordingly affirmed.
Vukovich, J., concurs.
Cox, P.J., concurs.
APPROVED:
 __________________________________ CHERYL L. WAITE, JUDGE