DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Robert Ray McKinley appeals the judgment of the Highland County Court of Common Pleas, Juvenile Division, permanently terminating his parental rights to his biological daughter, Elizabeth McKinley. Appellant argues that the trial court erred in granting Appellee Highland County Board of Children Services' motion for permanent custody because it failed to prove by clear and convincing evidence that permanent custody was in the best interest of Elizabeth. We disagree and affirm the well-reasoned judgment of the trial court.
 I. Facts and Proceedings Below {¶ 2} On December 7, 2001, Appellee Highland County Board of Children Services (HCBCS) was awarded temporary custody of Elizabeth McKinley after allegations that Elizabeth suffered abuse at the hands of her stepfather. Shortly thereafter, the stepfather was convicted in Clinton County, Ohio, and is presently serving a two-year sentence. Sadly, Elizabeth's mother, Pamela Wise, refused to complete a case plan that prohibited the stepfather from returning home. Instead, on May 31, 2002, Wise opted to voluntarily terminate her parental rights in Elizabeth. Thus, since December 31, 2001, Elizabeth has been in the temporary custody of HCBCS.
 {¶ 3} Prior to those events, Appellant Robert Ray McKinley, Elizabeth's biological father, had entered into a plea agreement on April 5, 1994, on charges of child molestation. He is presently serving two twelve-year sentences, concurrently, at Lee State Prison in Leesburg, Georgia. It was undisputed that the victim of appellant's acts was neither Elizabeth nor any other child who lived in appellant's household. However, appellant has not had person-to-person contact with Elizabeth since the age of five. Apparently, Elizabeth's mother insisted that Elizabeth and her sister, Jessica, not have any contact with their father, and this insistence became stronger after appellant's conviction. Appellant's family continues to reside in Georgia, while Wise moved to Ohio with Elizabeth sometime between the summer of 1997 and the summer of 2000. However, Wise left Jessica in the custody of appellant's mother.
 {¶ 4} Appellant was notified sometime between December 2001 and February 2002 that Elizabeth had been removed from her mother's home due to sexual abuse perpetrated by her stepfather. On September 27, 2002, appellant was served with a copy of HCBCS' motion to terminate his parental rights and for permanent custody of Elizabeth. Appellant made attempts to contact Elizabeth through HCBCS, but he was unable to establish contact until sometime between August and October 2002.
 {¶ 5} On January 23, 2003, the Highland County Court of Common Pleas, Juvenile Division, held a hearing on HCBCS' motion. The evidence showed that during the course of her custody with HCBCS, Elizabeth has moved eight times. However, at the time of the hearing Elizabeth was in a stable foster placement. At the hearing, Elizabeth testified that she did not want to be in the permanent custody of HCBCS. Her caseworker, Penny Yankowski, testified that HCBCS was seeking permanent custody of Elizabeth because HCBCS felt that it was in Elizabeth's best interest that she be adopted. However, Yankowski also testified that it was more difficult to secure adoption for a child of Elizabeth's age, fourteen, and that Elizabeth expressed that she did not want to be adopted. Yankowski also testified that appellant has sent numerous letters to Elizabeth through HCBCS and that HCBCS has made arrangements for appellant and Elizabeth to communicate with one another via the telephone.
 {¶ 6} In its judgment, the trial court found by clear and convincing evidence that Elizabeth had been in the temporary custody of HCBCS for twelve or more months of the twenty-two month period beginning on December 21, 2001 and ending on January 23, 2003. See R.C.2151.414(B)(1). The trial court also found that Elizabeth had not seen her father since she was five years old, that her father had been convicted of two counts of child molestation, and that he may not be released from incarceration until 2006. Thus, applying the factors at R.C. 2151.414(D)(1)-(4) and R.C. 2151.414(E)(7)-(11), the trial court found, by clear and convincing evidence, that it was in the best interest of Elizabeth to grant permanent custody to HCBCS, in order to secure a permanent placement for her.
 II. The Appeal {¶ 7} Appellant timely filed this appeal, and assigned as error the following:
 {¶ 8} "The trial court erred in granting Children's Services' motion for permanency as the Board failed to prove by clear and convincing evidence that permanency was in the best interest of the child."
 {¶ 9} Appellant argues that the trial court erred because the evidence is insufficient to support a finding by clear and convincing evidence that permanent custody is in Elizabeth's best interest. We disagree and affirm the judgment of the trial court.
 {¶ 10} R.C 2151.414(D) requires the court to make a finding regarding whether permanent custody is in the child's best interest. One of the factors the trial court must consider in determining whether it is in a child's best interest to terminate parental rights, is "[t]he child's need for legally secure placement and whether that type of placement can be achieved without a grant for permanent custody to the agency." R.C. 2151.414(D)(4).
 {¶ 11} A permanent custody determination made pursuant to R.C.2151.414 must be supported by clear and convincing evidence. See In reMourey, Athens App. No. 02CA48, 2003-Ohio-1870, at ¶ 25, citing In reBaby Girl Doe, 149 Ohio App.3d 717, 738, 778 N.E.2d 1053,2002-Ohio-4470, at ¶ 89, and In re Hiatt (1993), 86 Ohio App.3d 716,725, 621 N.E.2d 1222. Thus, we will not disturb a trial court's order terminating parental rights if, upon a review of the record, there is sufficient evidence to satisfy the clear and convincing standard. SeeCross v. Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118. See, also, In re Mourey, supra. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."Cross v. Ledford, 161 Ohio St. at 477, 120 N.E.2d 118, citing Merrick v.Ditzler (1915), 91 Ohio St. 256, 110 N.E. 493. Moreover, we will not substitute our judgment for that of the trial court applying a "clear and convincing evidence" standard where some competent, credible evidence exists to support the trial court's factual findings. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 12} In the case sub judice, the trial court stated that it found, by clear and convincing evidence, that placing Elizabeth in the permanent custody of HCBCS would be in Elizabeth's best interest based upon the factors found in R.C. 2151.414(D). We find that the record contains some competent, credible evidence supporting the court's finding.
 {¶ 13} R.C. 2151.414(D)(1) requires the court to consider as a factor the "interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child." Elizabeth testified to her relationship with appellant. She testified that, while she has not seen him since she was five years old, she has spoken to him over the telephone and received letters from him. She stated that it is like trying to get to know someone "because I've never really known him." However, she testified that she thinks it is starting out "pretty good." There was also evidence that Elizabeth had a fairly close relationship with her sister and grandmother, but she was not concerned with maintaining those relationships. Elizabeth testified that she was only concerned with maintaining her relationship with her father. Further, Elizabeth's mother had voluntarily relinquished her parental rights. The record also shows that HCBCS attempted to contact several relatives at the behest of appellant, but these attempts did not lead to any significant interactions with Elizabeth. It was undisputed that Elizabeth had been in several foster placements throughout her custody with HCBCS. Moreover, Elizabeth is currently in the foster placement of Jim and Cathy Wright, and that such foster placement was working out well.
 {¶ 14} R.C. 2151.414(D)(2) requires the court to consider the "wishes of the child, as expressed directly by the child * * *, with due regard for the maturity of the child." Elizabeth testified that she did not want HCBCS to have permanent custody. She stated that she desired to continue her relationship with her father and, should he be released from prison, that she be returned to live with him. There was no evidence that Elizabeth failed to demonstrate sufficient maturity to express these wishes.
 {¶ 15} R.C. 2151.414(D)(3) requires the court to consider the "custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *." The evidence is clear that Elizabeth has been in the custody of HCBCS since December 2001.
 {¶ 16} R.C. 2151.414(D)(4) requires the court to consider the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." The guardian ad litem reported that it was her belief that permanent custody was in Elizabeth's best interest. Moreover, during Elizabeth's temporary custody with HCBCS, she has been moved through eight separate placements. She has not had any permanent placement in two years. Also, since Elizabeth's mother terminated her parental rights and appellant is not scheduled to be released until 2006, the evidence is convincing that there is a need for some permanent placement for Elizabeth. Further, the only way to achieve this is through permanent custody with HCBCS.
 {¶ 17} R.C. 2151.414(D)(5) requires the court to consider, if applicable, any of the factors at R.C. 2151.414(E)(7)-(11), which concern the following: whether the parent committed a crime of abuse against the child, a sibling of the child, or a child living in the parent's house, R.C. 2151.414(E)(7); whether the parent has withheld food or medical treatment from the child, R.C. 2151.414(E)(8); whether the parent has placed the child in substantial risk of harm two or more times due to alcohol or drug abuse, R.C. 2151.414(E)(9); whether the parent has abandoned the child, R.C. 2151.414(E)(10); and whether the parent has had parental rights involuntarily terminated with respect to a sibling of the child, R.C. 2151.414(E)(11). Because appellant's crimes were not committed against Elizabeth, a sibling of Elizabeth, or any other child that lived in his house, R.C. 2151.414(E)(7) does not apply in this case. Likewise, both parties agree that R.C. 2151.414(E)(8), (9), (10), and (11) do not apply.
 {¶ 18} Appellant bases his arguments against permanent custody on the fact that Elizabeth voiced a desire to return to her father when he is released from incarceration. However, the child's desire is not the sole factor to consider. Rather, it is just one of four factors in R.C.2151.414(D) that guide courts in determining the best interest of the child. Therefore, when considering that factor in light of all the evidence presented, it is clear that the child's wishes are not determinative of whether a motion for permanent custody should be granted or denied.
 {¶ 19} Appellant also points out that he was scheduled for a parole hearing in February 2003. This court was given no indication of the results from appellant's parole hearing, and we can only assume that he remains incarcerated. Thus, as the trial court found, appellant is not scheduled to be released until 2006. The purpose of R.C. 2151 is to "provide for the care, protection, and mental and physical development of children * * * whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). Elizabeth's needs cannot wait for appellant to be released from prison. Further, the trial court was not required to deny HCBCS' motion based on speculative projections concerning appellant's parole hearing. "Where the sole parent's term of imprisonment is a lengthy one, such imprisonment may be a significant factor in determining whether the parent has acted so as to leave the child without adequate parental care. Should such imprisonment satisfy the standard of clear and convincing evidence that the child is without adequate parental care, the continuing imprisonment of the parent may likewise be considered in determining whether such deprivation will continue. Under such circumstances, the imprisoned parent's rights may be properly terminated." In re Hederson (1986),30 Ohio App.3d 187, 189-190, 507 N.E.2d 418.
 {¶ 20} Therefore, the evidence before the trial court is clear that Elizabeth needs secure permanent placement in a family unit. Furthermore, appellant is not, at this time, in a position to provide such a secure living environment. Thus, the evidence was sufficient for the trial court to find, by clear and convincing evidence, that granting permanent custody to HCBCS was appropriate.
 {¶ 21} Appellant's assignment of error is overruled.
 III. Conclusion {¶ 22} Because the trial court properly applied the factors at R.C. 2152.414(D) in determining to grant permanent custody of Elizabeth to HCBCS, and because its determination was supported by clear and convincing evidence, appellant's sole assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Harsha, J., and Kline, J., Concur in Judgment and Opinion.