DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Ebony B., appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, D.B., and placed the child in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.
 I. {¶ 2} Appellant is the natural mother of D.B., born June 30, 2004. Paternity of D.B. was never established. Appellant also has a ten-year-old son who is presently in the care of a relative. The custody of that child is not at issue here.
 {¶ 3} LCCS became involved in this matter in March 2004 when the Ohio Reformatory for Women notified the agency that appellant, who was incarcerated at the time, was pregnant and was not eligible for the prison nursery program because of her behavior in prison. Consequently, a placement was needed for the child. Appellant supplied a list of eight or nine possible caregivers, but none was willing to accept placement of the child. Therefore, when D.B. was born, LCCS filed a complaint in the Lorain County Court of Common Pleas, alleging that the child was neglected and dependent, and sought custody of her. The complaint noted appellant's history of substance abuse, prostitution, and anger management issues, and indicated concern that appellant would not be able to provide for the child. The trial court granted emergency temporary custody of the child to the agency and D.B. was placed in a foster home.
 {¶ 4} LCCS was able to develop a case plan based on its extensive history with appellant prior to the birth of D.B. Appellant had been in the custody of the agency from the age of 13 until the age of 16, when she was remanded to the Ohio Department of Youth Services. Her first child was born when she was 14. Appellant used marijuana from the age of 13. Appellant's history involved assault charges, domestic violence, menacing, and admitted anger issues. She pled guilty to a charge of telephone harassment involving a threat to a caseworker, and also had an open container charge from July 4, 2005.
 {¶ 5} The case plan addressed three central concerns: (1) substance abuse, (2) anger management, and (3) the ability to provide for the child's basic needs. The caseworker reviewed the case plan with appellant over the phone while she was still in prison, and submitted it to the court in August 2004. On September 27, 2004, the case plan was adopted by the court, and D.B. was adjudicated neglected and dependent. Upon appellant's release from prison on October 3, 2004, she signed and agreed to the same case plan.
 {¶ 6} Eventually, LCCS moved for permanent custody. Following a hearing on August 23, 2005, the trial court awarded permanent custody of D.B. to the agency and terminated the parental rights of appellant. Appellant has timely appealed and has assigned one error for review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN DETERMINING THAT THE CHILD COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH EITHER PARENT BASED ON AN ANALYSIS OF R.C. 2151.414(E)."
 {¶ 7} Appellant claims, in general terms, that the trial court erred in determining that the child could not be placed with a parent within a reasonable time, that the case planning by LCCS was not reasonable, and that the efforts of the agency were not directed to assist her in remedying the problems that caused the child to be placed outside the home. Appellant further argues, again in general terms, that the case plan should have been amended when it appeared that the means to reach the objectives of the plan were not sufficient.
 {¶ 8} More specifically, appellant's argument focuses on two purported insufficiencies of case planning by LCCS: (1) that appellant needed more structure, more support, and a more intensive program for substance abuse; and (2) that the referral for mental health issues was ineffective. Appellant also specifically argues that the trial court erred in finding that she cannot provide for the needs of her child. This Court will not respond to generalities that lack citation to the record, but shall respond to the three specific matters cited and argued in appellant's brief. See App.R. 12(A)(2).
 {¶ 9} Appellant's specific claims relate to the three areas of case planning. Therefore, appellant's claims will be addressed in regard to the referrals and related efforts by service providers as to each component of the case plan.
 {¶ 10} First, the substance abuse component of the case plan required appellant to complete a drug and alcohol assessment, follow all recommendations, provide random drug screens, and attend support meetings. Upon her release from prison, appellant promptly completed a drug and alcohol assessment in October 2004, and was diagnosed as alcohol and cannabis dependent. Appellant was referred for intensive outpatient treatment at Lorain County Alcohol and Drug Abuse Services ("LCADA"). An appointment was made for November, 2004, but appellant did not show up. Appellant submitted to a random drug screen in November, and the result was negative, but the related "spec gravity" test indicated that the sample might have been altered.
 {¶ 11} Katie Hammond, the LCCS caseworker, testified that she continued to encourage appellant to attend LCADA, but appellant refused to participate in any treatment from November 2004 until April 2005. She refused to attend any counseling sessions and also refused to provide any drug screens during those several months. Hammond indicated that she provided alternative resources to appellant for outpatient substance abuse counseling, but appellant refused to participate at all.
 {¶ 12} Eventually, in April 2005, appellant approached the agency and agreed to resume participation in a substance abuse program. She attended one session at LCADA and became very angry with the staff, who then indicated they were no longer willing to treat her. Drug tests conducted in April and May were positive for marijuana. Since LCADA was no longer an option, LCCS referred appellant to another agency, Psychiatric and Psychological Services, for intensive outpatient counseling to attempt to address appellant's on-going substance abuse issues.
 {¶ 13} Peggy Kirsh, director of chemical dependency services at Psychiatric and Psychological Services, testified regarding appellant's involvement with that agency. Following an initial interview and assessment, Kirsh met appellant at a group outpatient session on May 9, 2005. Kirsh explained that the program typically lasts six weeks, with three sessions per week. Appellant attended only four sessions over the course of four weeks. She often kept her head down and put her coat over her head. At other times, she exhibited a great deal of anger regarding her involvement with LCCS. In addition, appellant tested negative for marijuana in June 2005, but the July 2005 result indicated a false negative based on "spec gravity" once again. Kirsh testified that appellant's participation in the program was minimal and she made no progress.
 {¶ 14} Due to appellant's lack of attendance and poor level of participation, Kirsh concluded that appellant needed more structure and a higher level of care than her agency provided. Kirsh recommended that appellant be referred to a residential facility. Kirsh also testified that, despite many efforts to explain this to appellant, appellant seemed to have difficulty understanding the connection between a lack of attendance and the inability to successfully complete the outpatient program, and why that would necessitate a referral for residential treatment.
 {¶ 15} Residential treatment was recommended, but appellant refused to attend. Caseworker Hammond testified that appellant refused because when she had gone for residential treatment in the past, she got into an altercation with the staff and felt that would happen again. For her part, appellant denied that she had used marijuana and claimed that the positive drug test results were from being "around a lot of people doing drugs." Appellant also testified that part of the reason she did not enter residential treatment was that she needed to take care of her ailing grandmother.
 {¶ 16} On appeal, appellant argues that the referral to Psychiatric and Psychological Services was not sufficient to address her substance abuse problem. She contends that she needed more structure, more support, and a more intensive program. Unfortunately, appellant waited until her appeal to make this argument. She never asked for a more structured program while her case was pending with LCCS. In fact, appellant refused, for several months, to attend counseling sessions, to comply with requests for drug screens, or to attend a residential program — the very type of program she now contends she needed — when it was recommended by Psychiatric and Psychological Services and by LCCS.
 {¶ 17} LCCS is obligated to provide clients with reasonable case planning opportunities, but the client has a corresponding obligation to make an effort to attend and attentively participate in recommended programs. The client cannot sit idly by for months at a time, refusing to participate, and then fairly claim that the agency has failed her. Appellant's argument is without merit.
 {¶ 18} Second, appellant contends that the agency's referral to the Nord Mental Health Center was not effective as a means to address her mental health issues. In support, she cites the testimony of counselor Linton Overhalt, indicating that he was not aware of any successful treatment for the antisocial personality disorder with which appellant was diagnosed.
 {¶ 19} The record indicates that appellant was diagnosed with cannabis dependence, alcohol abuse, and antisocial personality disorder, exhibiting anger, defiance, and oppositional behavior. Appellant's stated goal was to obtain custody of her child. Overhalt did state that he was not aware of successful treatment for antisocial personality disorder, per se, but stated that his goal in treating appellant would have been to help her understand that she needed to modify her behavior in order to get her child back. Overhalt testified that he intended to work on appellant's anger, defiance, and oppositional behavior to get her compliant enough that she could begin an anger management group. He explained that until an individual is compliant and motivated, a referral to anger management would not be appropriate. Therefore, Nord offered counseling to appellant, provided she also follow up with LCADA for chemical dependency, remain clean and sober, and keep her appointments.
 {¶ 20} According to Overhalt, appellant attended three counseling sessions with him. At the first session, appellant was angry and oppositional. At the second, she asked Overhalt to tell LCCS that she had improved, despite the lack of any actual improvement. At the third, appellant refused Overhalt's suggestion that she apologize to the LCCS caseworkers that she had admittedly harassed. After appellant missed two counseling appointments with Overhalt, missed appointments at LCADA, and tested positive for marijuana, her case was closed based on lack of compliance and lack of motivation. Overhalt stated that appellant made little or no progress in the sessions she did attend.
 {¶ 21} Caseworker Hammond testified similarly that the hope of LCCS was that appellant could learn to control her anger through counseling so that she could deal with it in a safe and positive way, instead of through criminal behavior and the aggressive manner in which she had dealt with it previously. Hammond further testified that if appellant became angry and could not control her drug and alcohol abuse while in the presence of D.B., the child would be put at risk of harm.
 {¶ 22} Appellant's argument that the Nord Center was not an effective means to address her mental health issues is without merit. The therapy at Nord was designed to give appellant the tools she needed to deal with her antisocial personality disorder. The fact that appellant refused to appreciate those tools or take advantage of the counseling offered to her does not mean that the referral to Nord was unreasonable. There is no evidence in the record that the counseling at Nord would not have been helpful towards accomplishing appellant's goal of reunification with her child. Moreover, after appellant was terminated by Nord, LCCS offered appellant mental health referrals to two other agencies: Catholic Charities and the Far West Center. Appellant failed to take advantage of either of those opportunities. Appellant's lack of attendance at mental health counseling sessions is another example of the pattern of non-compliance she has repeatedly exhibited.
 {¶ 23} Third, and finally, appellant contends that the evidence supports a finding that she has the ability to provide basic needs for her child. When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon (2001),141 Ohio App.3d 103, 115. "`The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Alterations sic). Id., quoting State v. Thompkins (1997), 78 Ohio St. 3d 380, 387, quoting State v. Martin (1983), 20 Ohio App. 3d 172, 175.
 {¶ 24} The record reveals that appellant had an apartment before she entered prison, though there is no evidence as to how she paid for the apartment. Since her release from prison, appellant resided with friends and, more recently, with her grandparents. While the home of appellant's grandparents was said to be appropriate and acceptable, it is unclear how long appellant can remain there. Her grandmother recently moved to Texas for cancer treatments.
 {¶ 25} Caseworker Hammond made several attempts to help appellant obtain independent housing. A referral was made to the YWCA Transitional Housing Program while appellant was still in prison. Appellant, however, failed to follow through with the application process. Appellant then applied for public housing, but was denied. LCCS made another referral to Shelter Care Plus, but appellant, once again, failed to follow through with the process.
 {¶ 26} Appellant worked at McDonalds for two months since her release from prison, but that job apparently ended. Appellant testified that she was beginning a new, full-time job at Taco Bell on the following Monday, though she had no confirming paperwork, and did not know what time she was scheduled to begin work.
 {¶ 27} There was ample evidence before the trial court from which it could conclude that appellant was not able to provide for the child's needs. Appellant's third argument is without merit.
 {¶ 28} Appellant admits that she did not do everything on her case plan, but claims that she tried. She claims she had frequent personal conflicts with the caseworker. She states that she hates herself for putting her child in this predicament. She also insists that she "deserves" more time. She reasons that the agency's "clock was ticking" while she was still in jail. However, the record indicates that her case plan was adopted by the trial court just one week before her release from prison. More significantly, appellant must understand that the "clock was also ticking" during the five to six months when she refused to make any efforts towards completing her case plan. This Court is obligated to keep in mind that a "child has needs that cannot wait." In re Henderson (1986), 30 Ohio App.3d 187, 189.
 {¶ 29} Caseworker Hammond testified that she does not believe that appellant can be reunited with her child in that she has made little or no progress on any portion of her case plan in the last year. Caseworker Hammond and the guardian ad litem both expressed the belief that the best interest of the child is that she be placed in the permanent custody of the agency.
 {¶ 30} The record indicates that LCCS addressed all three components of the case plan by offering numerous referrals and opportunities to appellant, and that appellant repeatedly responded by missing appointments, refusing to participate, refusing drug screens, and failing to participate actively when she was present. Accordingly, appellant's assignment of error is without merit.
 III. {¶ 31} Appellant's sole assignment of error is overruled. The judgment of the Lorain county Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, P.J., Moore, J. concur.