DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Phillip C. ("the father"), appeals from a judgment of the of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his two minor children in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} This appeal involves E.C., born January 3, 2000, and S.C., born, May 20, 2003, the natural children of the father. The children's mother is not at issue in this appeal. Also not at issue in this appeal are the three older halfsiblings of E.C. and S.C. Although the trial court case impacted the parental rights of the three older children as well, the appeal as to the half-siblings was dismissed because those children are not children of the father, and he cannot appeal the termination of their parents' rights.
 {¶ 3} CSB first became involved in this case because the older children were not attending school. At that time, the four oldest children were living with their mother and the father.[1] Although the father was initially complying with many of the requirements of his case plan, he apparently was also manufacturing drugs in his home. He was arrested in December 2003 and has been incarcerated ever since. He was later convicted and sentenced to three years' incarceration.
 {¶ 4} CSB moved for permanent custody and, following a hearing on the motion, the trial court found that the children could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody to CSB was in their best interests. Therefore, the trial court granted the motion and terminated the father's parental rights. The father appeals and raises two assignments of error that will be consolidated for ease of review.
 First Assignment of Error
"The trial court's decision granting the motion for permanent custody was against the manifest weight of the evidence and/or contrary to law."
 Second Assignment of Error
"The trial court's decision granting the motion for permanent custody constituted an abuse of discretion."
 {¶ 5} The father contends that the trial court erred by granting the motion for permanent custody because it should have placed the children in the legal custody of their paternal grandfather. First, we must address whether the father has standing to raise this challenge on appeal.
"This Court has held that a parent has standing to challenge the trial court's failure to grant a motion for legal custody filed by a nonparent because the court's denial of that motion led to a grant of permanent custody to the children services agency, which impacted the residual rights of the parent. * * * The parent has standing to challenge only how the court's decision impacted the parent's rights, however, not the rights of the third party." In re J.J., 9th Dist. No. 21226, 2002-Ohio-7330, at ¶ 36, citing In re Evans (Feb. 2, 2000), 9th Dist. No. 19489, at 5.
Thus, the father's challenge is limited to whether the trial court improperly terminated his parental rights.
 {¶ 6} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 7} The first prong of the test was satisfied pursuant to R.C.2151.414(E)(12). That section provides that the trial court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" if the court finds that the parent is incarcerated at the time of the dispositional hearing and will not be available to care for the child for at least eighteen months. R.C. 2151.414(E)(12). The trial court found that the first prong of the test was satisfied because the father was incarcerated at that time and would continue to be incarcerated for more than another two years and, therefore, E.C. and S.C. cannot be placed with him within a reasonable time. That finding is clearly supported by the record. It was undisputed that the father had been sentenced to a three-year prison term and, at the time of the permanent custody hearing, he had served less than one year of that term.
 {¶ 8} Although the father asserts that the trial court did not consider the possibility that he could be released earlier due to good behavior, there was no such evidence before the trial court. Moreover, even if there had been evidence that there is a possibility of an early release, "[t]he trial court cannot be faulted for rejecting speculative projections concerning the length of [the father's] incarceration[.]" Inre Hederson (1986), 30 Ohio App.3d 187, 189. See, also, In re Brown,
11th Dist. No. 2004-L-027, 2004-Ohio-3337, at ¶ 13.
 {¶ 9} Next, we turn to the best interest prong of the permanent custody test. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[2]
 {¶ 10} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, 2002-Ohio-34, at *7; see, also, In re Palladino,
11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 11} The caseworker testified that, prior to the father's arrest in December 2003, he had been visiting with E.C. and S.C. regularly and his interaction with them was appropriate. The father attempts to focus this Court's attention solely on his pre-arrest interaction with his children, but overlooks the lack of interaction that he has had with his two young children since he was arrested for illegally manufacturing drugs in his home. Following his arrest in December 2003, the father had no further contact with the children.[3] At the time of the permanent custody hearing, it had been over eight months since the father had seen either child and his incarceration was to continue for more than another two years. E.C. was only three years old and S.C. was not yet two. Ongoing interaction was crucial to developing and maintaining any kind of parent-child bond, particularly for children of such young ages.
 {¶ 12} On the other hand, both children had been placed together in the same foster home and were doing well there. S.C. was born premature and has several medical issues, including kidney problems, fused fingers, and a missing shoulder muscle, but the full extent of her medical problems are not yet known. The foster family has been ensuring that S.C. receives medical treatment and is committed to caring for her special medical needs on an ongoing basis. The caseworker testified that both children are bonded with the foster family and the foster parents would like to adopt both children.
 {¶ 13} Because E.C. and S.C. were only one and three years old at the time of the permanent custody hearing, the guardian ad litem spoke on their behalf. She testified that permanent custody was in the best interests of both children. The guardian had observed these children with their father on many occasions. The guardian noted that, back when the father was attending visits with the children, S.C. slept through much of the visits, apparently due to her very young age. Thus, the court had further evidence before it that the father could not have developed much of a bond with S.C. in particular, given that he had little contact with her during her early months and had not even seen her for eight months, which represented more than half of her short life.
 {¶ 14} The custodial history of these children included very little time living with their parents. E.C. had been removed from her home shortly after she turned two and had been living in CSB custody for over a year, which represented well over one-third of her lifetime. Because S.C.'s mother had tested positive for amphetamines and methamphetamines during her pregnancy with S.C., S.C. was placed in CSB custody shortly after her birth. S.C. had spent her entire life in CSB custody and has never resided with the father.
 {¶ 15} This Court has held that, although a long period away from the parent is significant, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In re Smith, supra, at *13. Unlike the In re Smith case, however, the record in this case does not demonstrate that the parent was making great strides toward reunification with the child during the period of separation. During the time that E.C. and S.C. were in CSB custody, rather than working to provide a suitable home for his children to return to, the father was conducting illegal drug manufacturing activity in the family home, leading to his conviction and current incarceration. The father has put himself in a position in which he has no contact with his children and will be unable to care for them for another two years.
 {¶ 16} There was also evidence that these children need a legally secure permanent placement and that neither of their parents nor any suitable relatives are available to care for them on an ongoing basis. The father asserts that his father, the children's 80-year-old grandfather, was a suitable permanent placement and that the children should have been placed in his legal custody. CSB had considered the paternal grandfather as a possible placement for the children, but found him to be an unsuitable caregiver and the trial court agreed. In addition to his advanced age, the grandfather was not in good health and he did not have the financial means to care for the children. Moreover, the guardian ad litem expressed her belief that the grandfather, who had been living in the father's home during the time of the illegal drug manufacturing, was aware that illegal activity was taking place in the home. Given that E.C. and S.C. were only one and three years old at the time, and that S.C. had special medical needs, the trial court reasonably concluded that the paternal grandfather was not a suitable permanent placement.
 {¶ 17} There was ample evidence before the trial court from which it could conclude that the E.C. and S.C. could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody was in their best interests. Consequently, the trial court did not err in terminating the father's parental rights and placing E.C. and S.C. in the permanent custody of CSB. The assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Moore, J., concur.
[1] S.C. was born after the older children were removed from the home.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.
[3] There was no evidence or discussion during the hearing as to whether there could have been visitation with the children during the father's incarceration, nor does he argue on appeal that such visits should have taken place. Consequently, we do not address that issue.