DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Shannon Hedrick, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her child, N.B. and placed her in the permanent custody of the Summit County Children Services Board, ("CSB"). We affirm.
 I. {¶ 2} Appellant is the mother of N.B., born July 16, 2003. Jason Boggs, the father, has not appealed. Based on a referral from a physician on March 15, 2004, the police asked the parents to transport N.B. to the hospital. Following an examination, the child was found to be in the third percentile for weight, to have bruises on her face, chest, back, right knee, and right shin, and to have broken bones in her right arm, left elbow, left ribs, and right hip — all in various stages of healing.
 {¶ 3} On March 16, 2004, CSB filed a complaint, alleging that the child was abused, neglected, and dependent, and seeking an emergency order of temporary custody. The trial court placed the child in emergency temporary custody and the matter proceeded to adjudication and disposition. Following hearings, the child was adjudicated abused, neglected, and dependent, and was placed in the temporary custody of CSB. The parents were charged with child endangering and a no-contact order was issued. In August 2004, Appellant pled guilty to child endangering, in violation of R.C.2919.22(A), and was sentenced to one year in prison. Boggs pled guilty to child endangering, in violation of R.C. 2919.22(B)(1), and was sentenced to four years in prison.
 {¶ 4} On September 2, 2004, CSB moved for permanent custody of the child. Shortly thereafter, Jamie Storad, maternal grandmother, moved for legal custody of the child. Following a hearing, the trial court found that the child could not be placed with either of her parents within a reasonable time or should not be placed with her parents, and that it was in the best interest of the child to be placed in the permanent custody of CSB. Accordingly, the trial court denied Storad's motion for legal custody and granted CSB's motion for permanent custody. In addition, the trial court entered a finding that Appellant voluntarily terminated her parental rights. Appellant timely appeals and assigns three errors for review.
 II. Assignment of Error I
"The trial court erred in finding that it is in the Minor childrens' (sic) best interest that she be placed in the permanent custody of CSB and not in the legal custody of maternal grandmother as the prosecution failed to meet its burden of proof requiring clear and convincing evidence and such finding is against the manifest weight of the evidence[.]"
 {¶ 5} Appellant contends that the judgment of the trial court, granting CSB's motion for permanent custody and denying maternal grandmother's motion for legal custody, is against the manifest weight of the evidence.
 {¶ 6} At the outset, we observe that a parent has standing to challenge a trial court's failure to grant a motion for legal custody filed by a non-parent where the court's denial of that motion led to a grant of permanent custody to a children's services agency and thereby impacted the residual rights of the parent. In re Evens (Feb. 2, 2000), 9th Dist. No. 19489. The parent's challenge, however, is limited to the impact of the trial court's decision on his or her own rights, i.e., whether the trial court improperly terminated parental rights. In reE.C. and S.C., 9th Dist. No. 22355, 2005-Ohio-1633, at ¶ 5. We, therefore, proceed to address the assignment of error from that perspective.
 {¶ 7} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B) (1) and 2151.414(B) (2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 8} Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quotingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In reOzmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 10} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 11} The first prong of the permanent custody test was found to be satisfied pursuant to R.C. 2151.414(E)(5). That section provides that the trial court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent" if the court finds that the parent is incarcerated for an offense committed against the child. R.C. 2151.414(E)(5). The trial court found that each parent pled guilty and was incarcerated for the offense of child endangering as to N.B. Appellant has not disputed the finding that N.B. cannot be placed with either parent within a reasonable time based on their incarcerations for offenses committed against the child. R.C. 2151.414(B)(1) and R.C.2151.414(E)(5). Appellant does, however, challenge the finding that permanent custody is in the best interest of the child.
 {¶ 12} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D) (1)-(5)."
 {¶ 13} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. SeeIn re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, Inre Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 14} The first best interest factor requires consideration of the relevant personal relationships of the child. R.C.2151.414(D)(1). As to the parents, the most telling evidence of their relationship with the child was N.B.'s condition at the time she was removed from the home: she was underweight, had several bruises and numerous fractured bones in various stages of healing, indicating that the injuries took place over a period of time. In addition, she could not sit up, engaged in very little activity, and withdrew from touch. Although the parents were subject to a no-contact order and could not visit N.B., they also made no effort towards written or telephonic communication with the child, except for a single birthday card.
 {¶ 15} The progress of the parents on their case plan may also be instructive as to the first best interest factor. The case plan required the parents to address mental health, anger management, substance abuse, and parenting skills. Appellant's compliance with her case plan was very poor, while Boggs' compliance was only slightly better. Neither parent scheduled a mental health assessment or took any steps towards addressing anger management problems. Neither parent obtained a parenting assessment, even though the CSB caseworker obtained a monetary grant to pay for their assessments. Appellant did not obtain a substance abuse assessment and the only two drug screens she provided — on July 8, 2004, and July 26, 2004 — tested positive for drugs that included barbiturates, opiates, and cocaine. Father did obtain a substance abuse assessment and his drug screens were negative. According to Jacqueline Abrams-Rodkey, the CSB caseworker assigned to this case, neither parent demonstrated a commitment to the child or an ability to provide a home for the child currently or within a reasonable time.
 {¶ 16} Jamie Storad, maternal grandmother, also has a relationship with the child, though the evidence does not demonstrate it to be a very strong relationship. Prior to the removal of N.B. from her home, Storad saw the child once or twice a month, and thereafter visited monthly at the CSB visitation center. Despite her contact, she did not notice N.B.'s injuries. And despite noticing that N.B. was underweight, she took Appellant's word that she was feeding N.B. properly. Storad says she would love to raise N.B., but admits that she never actually babysat the child or even changed her diaper. Storad testified that if she were granted legal custody, she would cut all ties with her daughter. However, she reportedly also stated that she believed Appellant deserved a second chance. The guardian ad litem indicated that Storad admitted she wanted custody so that the child could see her mother.
 {¶ 17} Storad complained that she was not provided with sufficient information regarding custodial or adoptive options. However, she also admitted that she was advised to obtain an attorney, to attend adoption classes, and to make further contact with the agency, and yet did not follow through with this advice.
 {¶ 18} The child was placed with Renee Moyers, a paternal great aunt, after a brief stay in a foster home. N.B. resided with the Moyers family for nine months. According to the testimony of the caseworker, the guardian ad litem, and the initial foster caregiver, the child has thrived physically and emotionally under Moyers' care. The caseworker testified that N.B. is very bonded to family. The child is said to be happy, growing, active, and loving. The caseworker stated that she was impressed by the family's commitment to N.B. Of particular importance, is the caseworker's testimony that Moyers has been very attentive to the child's medical care and concerned about meeting her needs. Nancy Delnay, CSB's director of clinic services with training and experience in the identification and prevention of child abuse, testified similarly. Delnay explained that N.B.'s future caregiver will need to work closely with the child's primary care provider, a nutritionist, and an orthopedic physician. She added that Moyers had been very responsible in attending to the child's appointments and very good at communicating concerns. Delnay added that no other family members had been involved in the medical care of the child.
 {¶ 19} The wishes of this very young child were expressed by the guardian ad litem. R.C. 2151.414(D)(2). The guardian ad litem stated that the child would not be safe if placed with the maternal relatives because they might permit contact with the parents. She believed that it was in the best interest of the child to be placed in the permanent custody of CSB.
 {¶ 20} The third best interest factor is the custodial history of the child. R.C. 2151.414(D)(3). N.B. lived with her parents until she was approximately eight months old, at which time she came into the custody of CSB. She remained in one foster placement for three and one-half weeks, and was then placed with Renee Moyers for nine months.
 {¶ 21} The fourth best interest factor requires consideration of the child's need for a legally secure permanent placement and whether such a placement may be achieved without a grant of permanent custody. R.C. 2151.414(D)(4).
 {¶ 22} The caseworker testified that she believed the best interest of the child was to grant permanent custody to CSB so that the child's safety could be assured. She explained that there was still a great deal of denial on the part of the maternal family members that abuse ever occurred. Despite the family's professions of intentions to keep N.B. away from Appellant, maternal grandmother reportedly told the caseworker that Appellant deserved a second chance. The caseworker believed that the maternal family members would allow contact between Appellant and N.B. The guardian ad litem testified similarly that she did not believe the child would be safe if she were placed with maternal relatives. Maternal grandmother had reportedly admitted to the guardian ad litem that she was seeking custody so that the child could see her mother. Foster mother Moyers testified that, while she was willing to adopt N.B., she was unwilling to accept legal custody. Moyers believed that under the conditions of legal custody, she could not protect the child from a risk of harm from Appellant.
 {¶ 23} Finally, the trial court may consider that a parent has been convicted of or pleaded guilty to an offense of child endangering regarding his or her child. R.C. 2151.414(E)(7)(c). In this case, there was evidence of the convictions of both parents for child endangering.
 {¶ 24} There was ample evidence before the trial court from which it could conclude that N.B. could not be placed with either parent within a reasonable time or should not be placed with them, and that permanent custody was in the child's best interest. Consequently, the trial court did not err in denying the motion for legal custody, terminating Appellant's parental rights, and placing N.B. in the permanent custody of CSB. Appellant's first assignment of error is overruled.
 Assignment of Error II
"The trial court erred in finding that appellant hedrick's termination of parental rights was voluntary based upon the trial court's error in denying legal custody to maternal grandmother as appellant's relinquishment was predicated upon a proper finding as to maternal grandmother's motion for legal custody[.]"
 {¶ 25} Appellant asserts that the trial court erred in accepting a voluntary relinquishment of her parental rights. Specifically, she contends that her surrender was to be predicated on a prior and "proper finding" with regard to maternal grandmother's motion for legal custody. She further claims that the trial court erred in denying the motion for legal custody, and, therefore, her voluntary surrender was not knowingly made.
 {¶ 26} As demonstrated above, the determinations of the trial court that the child could not be placed with a parent within a reasonable time or should not be placed with a parent, and also that the best interest of the child was to be placed in the permanent custody of CSB were not against the weight of the evidence. Correspondingly, the trial court did not err in denying Storad's motion for legal custody. Because the evidence satisfied the requirements for an involuntary termination of parental rights, the trial court was not also required to find a voluntary relinquishment of parental rights before it could find that the parental rights to N.B. were terminated. Accordingly, the second assignment of error is overruled.
 Assignment of Error III
"The trial court decision should be reversed based on ineffective assistance of counsel [.]"
 {¶ 27} Appellant claims she was denied the effective assistance of counsel when her trial counsel failed to object to the content of the inquiry conducted during her voluntary relinquishment or to the fact that the court took the surrender prior to the testimony regarding maternal grandmother's motion for legal custody.
 {¶ 28} In reviewing ineffective assistance of counsel claims, this court will apply the same standard in permanent custody cases that it applies in criminal cases. In re Creel (Sept. 20, 2000), 9th Dist. Nos. 20066 and 20074. Thus, a successful ineffective assistance of counsel claim requires a showing that counsel's performance has "fallen below an objective standard of reasonable representation" and that prejudice arose from counsel's deficient performance. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. "To show that [an individual] has been prejudiced by counsel's deficient performance, [the individual] must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., at paragraph three of the syllabus. Upon consideration, we conclude that no prejudice accrued to Appellant by her counsel's failure to object to the purported voluntary relinquishment of parental rights.
 {¶ 29} Appellant asserts error in three regards. She first contends that the lack of objection limited her presentation of witnesses in support of the motion for legal custody. Appellant, however, does not point to any place in the record that demonstrates she was denied the right to call a witness, nor does she suggest the names of particular witnesses that she was denied the ability to call. An appellant bears the burden of affirmatively demonstrating error on appeal, which includes providing citations to authorities and parts of the record on which appellant relies. App.R. 16(A)(7); Loc.R.7(A)(7). Thus, Appellant has failed to demonstrate her claim that she was denied the ability to present witnesses in favor of the motion for legal custody.
 {¶ 30} Second, Appellant contends that she was uninformed as to how a voluntary relinquishment may affect her appeal rights. In her first assignment of error, Appellant challenged the trial court findings supporting an involuntary termination of her parental rights, and the merits of that issue have been addressed. In the second assignment of error, this court determined that the trial court was not required to find a voluntary relinquishment of parental rights where the evidence satisfied the requirements for an involuntary termination of parental rights. In this assignment of error, Appellant has not explained or demonstrated how her appeal rights have been otherwise prejudiced.
 {¶ 31} Finally, Appellant contends that she felt pressured by her trial counsel to voluntarily relinquish her rights. Again, Appellant has not pointed to any place in the record where such pressure is demonstrated, and she has therefore failed to meet her burden of demonstrating error. Furthermore, it is worth noting that there may, in fact, be certain benefits to a parent who voluntarily relinquishes parental rights as opposed to having had his or her parental rights involuntarily terminated. See R.C.2151.414(E)(11).
 {¶ 32} Accordingly, Appellant's third assignment of error is overruled.
 III. {¶ 33} Appellant's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Carr, J., Concur.